IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARK BOLEN,

    Petitioner,

v.                                                         CASE NO. 1:08-cv-00007-MP-GRJ

WALTER A. MCNEIL,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The Petition stems from Petitioner's Alachua County jury conviction for burglary and attempt to commit robbery, for which he received a total sentence of 10 years imprisonment.  Petitioner contends that his trial counsel rendered constitutionally ineffective assistance for erroneously conceding that the State established Petitioner's identification in the State's case-in-chief and for failing to object to the State's introduction of "highly prejudicial testimony," which described the scene of the charged offense as a "high crime area." Doc. 1.  Respondent filed a response and appendix with relevant portions of the state-court record, and Petitioner filed a reply to the response.  Docs. 9, 12.  Upon due consideration of the Petition, the Response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

## State-Court Proceedings

As set forth in the state-court record, the facts adduced at Petitioner's jury trial may be summarized as follows.  See Respondent's Appendix ("App.") Exh. B (transcript of jury trial).  Petitioner was charged with one count of burglary with battery in violation of Fla. Stat. § 810.02(2)(a), and one count of attempt to commit robbery in violation of Fla. Stat. § 777.04(4)(e).  App. Exh. A.

The victim, John Robert Pearce, testified that he lived at 203 Northwest 11th Street for approximately 27 years.  Mr. Pearce worked in the area near his home for about fifteen years, purchasing and renovating abandoned or uninhabitable homes.  Mr. Pearce also volunteered with the City of Gainesville Plan Board.

On November 23, 2004, around 3:15 p.m., Mr. Pearce, in his capacity as a citizen, drove around the area near his home.  Specifically, Mr. Pearce drove in the vicinity of 900 Northwest 4th Place.  Mr. Pearce brought his camera with him hoping to document suspicious activity in the area.  Mr. Pearce explained that he was taking photographs to present to the City Commission at an upcoming hearing involving a rezoning petition.  Mr. Pearce hoped, if passed, the rezoning petition would encourage private reinvestment in the area, improve the quality of life, and displace common criminal activity occurring on a regular basis.  Mr. Pearce explained that the area where he lives and where he took photographs is "a genuine area of slum and blight and there is a high level of criminal activity on the street on a very regular basis."  Mr. Pearce further testified he often sees "obvious criminal activity" and "suspicious activity" in the area.  He described the activity as typically involving prostitution and drugs.  Mr. Pearce was in the area attempting to photograph what he considered "slum and blight."

According to Mr. Pearce, on November 23, 2004, he observed six to eight mostly black males as he drove up 4th Place. As Mr. Pearce approached some of the individuals ran away while others remained with their shirts pulled up, covering their faces. Mr. Pearce explained that he thought the activity was suspicious, so he took photographs of the individuals. Mr. Pearce then drove slowly past the individuals and stopped about twenty feet past the group to continue taking photographs. While Mr. Pearce was stopped, one of the black males of medium height, with his shirt pulled over his face, approached the passenger side of Mr. Pearce's vehicle and made several verbal comments to Mr. Pearce. Thereafter, the same man walked around and approached Mr. Pearce on the driver's side of his vehicle. The man leaned through the driver's side window of Mr. Pearce's vehicle, making verbal demands to the camera, and attempted to retrieve Mr. Pearce's camera. Mr. Pearce testified that an intense struggled ensued. As the man was clawing with full force to grab Mr. Pearce's camera, Mr. Pearce sustained a small laceration on his arm.

After the brief struggle, the man removed himself from Mr. Pearce's vehicle. Thereafter, Mr. Pearce drove to the end of 4th Place, made a left turn onto 10th Street, turned around in a parking area, and slowly drove past the intersecting point of 4th Place and 10th Street to take photographs of the man who came after him. Mr. Pearce noticed the man was wearing a dark blue shirt with gold or yellow lettering and baggy blue jean pants of a different shade of blue. Mr. Pearce returned to his residence, which was located approximately one block away, and called 9-1-1.

Gainesville Police Department Officer Rab Narayan responded to the call from dispatch. Dispatch provided a description of the clothing Petitioner was wearing. Upon

arrival to the vicinity of 900 Northwest 4th Place, Officer Narayan identified Petitioner by the clothing description.  Petitioner fled, and Officer Narayan chased Petitioner.  During the pursuit, Petitioner removed his t-shirt and attempted to discard it.  Once Petitioner was detained, Officer Narayan recovered the t-shirt.  Officer Narayan asked Mr. Pearce to return to 900 Northwest 4th Place.  Mr. Pearce could not facially identify Petitioner, but Mr. Pearce identified Petitioner's clothing and t-shirt.  At trial, Mr. Pearce confirmed that the t-shirt in evidence was the t-shirt he previously identified as the one worn by the man with whom he struggled on November 23, 2004.

Gainesville Police Department Officer Gerald Hunter testified that he collected a roll of film from Mr. Pearce and a t-shirt from Officer Narayan.  Investigator Greta Moreau testified that she was the photo lab technician for the Gainesville Police Department and that she attempted to develop the film from Mr. Pearce's camera.  Investigator Moreau testified that no photographs were recoverable from Mr. Pearce's camera because the machine used to develop film malfunctioned and exposed the film.

When the state rested its case, and outside the presence of the jury, Petitioner's counsel moved for a judgment of acquittal.  Petitioner's counsel stated that he had "a section in [his] notes where [he] check[s] off issues of identification and jurisdiction."  Petitioner's counsel further stated that "[he thought] the state adequately established identification."  The trial court denied the motion stating that the state "established a prima facie case."  The defense rested without putting on any evidence.  Out of the presence of the jury, the trial court conducted a colloquy with Petitioner who testified under oath that he understood he had the right to testify and wished to waive that right.

The jury found Petitioner guilty of burglary, a lesser-included offense of burglary

with a battery, and guilty of attempt to commit robbery. App. Exh. C. Petitioner was sentenced for burglary as a Habitual Felony Offender to 10 years incarceration with 210-days credit time served, and for attempted robbery as a Habitual Felony Offender and a Prison Releasee Reoffender ("PRR") to a total of 10 years incarceration with the first 5 years served as PRR; both sentences were ordered to run consecutively. App. Exh. D. Petitioner's convictions were affirmed on direct appeal, but his sentences were corrected on postconviction review to run concurrently. App. Exh. J.

On November 21, 2006 Petitioner filed a *pro se* motion for post-conviction relief pursuant to Fla. R. Crim P. 3.850. App. Exh. O. Petitioner alleged that trial counsel rendered ineffective assistance by: (1) erroneously conceding that the State established Petitioner's identification in the State's case-in-chief; (2) failing to object to the State's introduction of "highly prejudicial testimony" which described the scene of the charged offense as a "high crime area"; and (3) cumulative error. *Id.* Applying *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court denied Petitioner's motion for post-conviction relief. The trial court determined that Petitioner's trial counsel did not render ineffective assistance and that Petitioner's other grounds were without merit. App. Exh. P. The First District Court of Appeals without opinion *per curiam* affirmed the lower court's denial of post-conviction relief. App. Exh. T. Petitioner filed a motion for rehearing *en banc* pursuant to Fla. R. App. P. 9.331, and the First District denied the motion for rehearing without opinion. App. Exh. U.

Petitioner then filed the instant federal habeas Petition pursuant to 28 U.S.C. § 2254, which Respondent concedes is timely and exhausted. Doc. 1, 9. Petitioner reasserts his claims that his trial counsel rendered constitutionally ineffective assistance

by erroneously conceding that the State established Petitioner's identification in its case-in-chief and by failing to object to the state's introduction of "highly prejudicial testimony" which described the scene of the charged offense as a "high crime area". Doc. 1.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law

compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). See also, Carey v. Musladin, 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta*, of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

## **Ineffective Assistance of Counsel**

Because Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate

*Case No: 1:08-cv-00007-MP-GRJ*

(1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance.  *Strickland*, 466 U.S. at 689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight."  *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007).  "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel."  *Id*.  When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing.  *Id*.  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption . . . that [counsel] did what he should

have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

The Eleventh Circuit has recognized that given these principles and

presumptions "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d 1305, 1313 n.15 (en banc). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).

## Petitioner's Claims

Petitioner asserts two grounds for postconviction relief in the Petition. Doc. 1. Petitioner alleges that trial counsel rendered constitutionally ineffective assistance by erroneously conceding the State established Petitioner's identification in its case-in-chief and by failing to object to the State's introductions of "highly prejudicial testimony" which described the scene of the charged offense as a "high crime area." Doc. 1. The Court will address each ground in turn.

### (1) Ineffective Assistance: Petitioner's Identification

Petitioner claims that his trial counsel conceded his identification – and in effect conceded his guilt – prejudicing the outcome of Petitioner's trial. Doc. 1. In support of Petitioner's claim, he points to counsel's statement, out of the jury's presence, that "I have a little section in my notes where I check off issues of identification and jurisdiction. I think the state adequately established identification." App. Exh. B. The trial court denied Petitioner's motion for judgment of acquittal finding the state established a "prima facie case." *Id.*

The state court applied *Strickland* to conclude that Petitioner failed to show that counsel's performance was either deficient or that the outcome of the trial was

prejudiced by the challenged statement. App. Exh. P. The state court noted that Petitioner's counsel did not concede Petitioner's guilt, but rather conceded only that the State put on sufficient evidence as to identification to make a prima facie case for the jury. *Id.* The state court further found that "even if counsel had not made [the] concession, the trial court denied the motion based on its own finding that the State had made a prima facie case." *Id.* The state court also determined that Petitioner failed to show prejudice because the concession regarding identification was part of a legal argument, and was not a concession as to Petitioner's guilt, nor was it a concession made to the jury. *Id.* Moreover, in arguments to the jury, Petitioner's counsel argued that Petitioner "was not the person who committed the charged offense" and that the victim was "making up" the offense for his own benefit. *Id.*

Because the challenged statement was made outside of the jury's presence, there is no possibility that the statement affected the outcome of Petitioner's trial. Further, the state court explained that it would have denied counsel's motion even in the absence of the challenged statement. Under these circumstances, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, *Strickland*.

### (2) Ineffective Assistance: "High Crime Area"

In Petitioner's second claim, he contends that his trial counsel was ineffective for failing to object to references made at trial that the charged offense occurred in a "high crime area." Doc. 1. Petitioner alleges that comments made by the State in the State's opening statement, closing argument, and testimony by the victim regarding criminal activity in the area prejudiced the jury. *Id.*

The state court applied *Strickland* to reject Petitioner's claim on the following rationale.  App. Exh. P.  As noted, during trial, the victim described the area where the charged offense occurred based on his personal experiences and the victim referred to the area as one of "slum and blight."  App. Exh. B.  The victim was in the area attempting to photograph what he considered "slum and blight" to bring before the City Commission in hopes a rezoning petition would be passed and encourage private reinvestment in the area, improve the quality of life, and displace common criminal activity occurring regularly.  *Id.*  The victim further testified that there is a "high level of criminal activity" in the area.  *Id.*  He described the activities as typically involving prostitution and drugs.  In response, Petitioner's counsel argued the illegal activities the victim described as prostitution and drugs were not occurring "at the time of the offense, nor were they the source of the offense."  App. Exh. P.  Furthermore, when the State did offer testimony by Officer Narayan of his experience with "general crime problems unrelated to the charged offense[,]" Petitioner's counsel objected to the State's questioning, and the objection was sustained.  *Id.*

The state court explained the distinction between testimony regarding observations on "presently occurring criminal activity and testimony simply characterizing an arrest area as a high crime area."  *Id* (citing *Dorsey v. State*, 639 So. 2d 158, 159 (Fla. 1st DCA 1994).).  In the instant case, the state court found that "the victim was providing relevant context testimony" to explain why he was in the area where the offense occurred.  *Id* (*citing Gillion v. State*, 573 So. 2d 810, 811 (Fla. 1991).).  Additionally, the victim was testifying as a factual matter to his own personal observations, which is distinct from characterizing the area as a "high crime area."  App.

Exh. P.

Furthermore, the court noted that in the State's opening statement and closing argument, the State summarized the victim's observations in the area of the charged offense to explain the victim's reasons for being in the area taking photographs. *Id.* The State did not argue, nor was evidence presented at trial, that Petitioner was arrested in a "high crime area," nor did any of the officers testify that the offense occurred in a "high crime area." *Id.* Additionally, the offense Petitioner was charged with is not the type of criminal activity the victim had described as occurring in the area. *Id.* Accordingly, the state court concluded that neither the victim's testimony nor other comments at trial describing the area where the charged offense occurred were improper. *Id.*

In order to grant habeas relief on the basis of an evidentiary error, there must have been error of constitutional dimension and that error must have resulted in actual prejudice. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). It must be shown that the error had a "substantial and injurious effect" or influence in determining the jury's verdict. *Id.* The federal habeas court must consider whether any asserted error substantially influenced the jury's decision. *See O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). In light of the substantial and uncontroverted evidence of Petitioner's guilt, including the victim's identification of Petitioner by the clothing Petitioner was wearing and Officer Narayan's identification of Petitioner by the clothing description dispatch received, the Court is satisfied that the asserted error had no effect on the jury's verdict, and therefore that Petitioner's counsel did not render ineffective assistance by failing to object to the testimony. Under these circumstances, Petitioner has failed to show that

the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus, Doc. 1, be **DENIED,** and that a certificate of appealability be **DENIED**.

**IN CHAMBERS** this 7th day of June 2011.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**